No. 5754.

LEWIS COOPER v. THE STATE.

1. CARRYING ARMS ABOUT ELECTIONS—CARRYING ARMS WHERE PEOPLE ARE COLLECTED TO VOTE.—If the inculpatory acts enumerated in two different articles of the Penal Code be the same, and the penalties prescribed be different, its seems that neither would be enforcible, because of uncertainty as to the penalty.

2. SAME.—Although one of the ingredients of each is common to both, the offenses defined respectively by article 163 of the Penal Code (carrying arms about an election), and article 320 of the Penal Code (carrying arms where people are collected to vote, etc.), are distinct offenses, comprehending different elements and punished by different penalties.

3. SAME.—If the election about which the fire arm was carried was held under color of law, it would be immaterial, so far as this offense is concerned, that the election was not conducted in strict compliance with the statute.

APPEAL from the District Court of Karnes. Tried below before the Hon. H. C. Pleasants.

This conviction was for carrying a gun about an election, as that offense is defined by article 163 of the Penal Code. The punishment assessed against the appellant was a fine of one hundred dollars.

The State read in evidence the petition of the citizens of precinct number 4, of Karnes county, for an election under the local option law, the order of the commissioners' court thereon, appointing the election, and the subsequent order of the same court declaring the result of the election.

The State then introduced M. M. Mayfield, who testified that he was at Daileyville in Karnes county, Texas, on the sixth day of September, 1886, when an election was held under the local option law. At about twelve o'clock, noon, some shooting took place in front of the store at Daileyville. When the shooting commenced the witness, who was in the rear of the store, went off in a west direction. He returned to the store in a very short time, and on his way back he saw the defendant going to the store with a gun in his hands. This was but two or three minutes after the shooting. Defendant was within thirty-five or

forty steps of the polling place, and the polls were open when witness saw him with the gun.

The State closed.

Norris McLane testified, for the defense, that defendant came to his house about sun down on the evening before the local option election at Daileyville., He had no gun then. He passed that night at witness's house. When witness started to Daileyville on the next morning to act as clerk of election, he requested defendant to go with John Stilz and help kill a beef, and he knew that defendant did go off with Stilz to hunt the beef. He did not know when defendant came to the polls, but immediately after the shooting, which occurred about noon, witness and defendant left the store together and went to witness's house to dinner. Defendant had no gun then, nor did he have a gun when he returned to the polls after dinner. Defendant knew on the norning of the election that witness was going to Daileyville, but witness was unable to say whether or not he knew what witness was going for, or that there was to be an election at Daileyville on that day.

W. A. Little testified, for the defense, in substance, that he and defendant and other parties were under a large tree to the right of the front of the store, when the shooting mentioned by the witness McLane occurred. The parties scattered when the shooting commenced. Witness did not know which way the defendant went, but he knew that defendant had no gun when he left the tree, nor before that time, while in company with witness. Witness next saw the defendant three or four minutes after the shooting, and he had no gun then. He saw defendant again when he left the polls in the evening; and he had no gun then.

S. O. Dailey testified, for the defense, that he was present when the shooting occurred at Daileyville on the day of the local option election referred to by previous witnesses. He saw the defendant circulating among the people before the shooting occurred. Defendant had no gun at that time. Witness again saw defendant about three o'clock, at which time the defendant had no gun.

The motion for new trial raised the questions discussed in the opinion.

*E. R. Lane,* for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

Hurt, Judge.   Appellant was convicted for carrying a gun on a day of election, during the hours the polls were open, within one-half mile of the voting place.   He, by counsel, moved to quash the indictment, because article 163 of the Penal Code, upon which this indictment is predicated, and article 320 of the Penal Code "define the same offense set forth in the indictment, and they provide different punishments; and, therefore, no certain punishment is affixed by law to the offense charged."

If the same acts constitute an offense, though found in different statutes or articles of the same code, and these acts are punished differently, we would be inclined to hold that article 3 of the Code of Criminal Procedure would be infringed, and that neither could be enforced for want of certainty in the punishment.   But is this the case presented in this record?

Article 163 of the Penal Code makes it a crime for any person (other than a peace officer) to carry a gun on any day of election, during the hours the polls are open, within one-half mile of the voting place, and the punishment fixed is a fine of not less than one hundred nor more than five hundred dollars, and in addition thereto the offender may be imprisoned in the county jail for a period not exceeding one month.

Now, what are the elements of this offense?   First, a gun or pistol must be carried on a day of election; second, the gun must be carried during the hours the polls are open; third, it must be carried within one-half mile of the voting place.

What are the ingredients of the offense defined by article 320 of the Penal Code?   First, going to an election precinct on the day or days of an election; second, there must be a going when any portion of the people of this State are *collected* to vote at an election; third, a having or carrying about the person any fire arm, etc.   The penalty to this offense is a fine not less than fifty nor more than five hundred dollars.

By comparing the provisions of these articles, to wit, 163 and 320, it will readily be found that the elements of the offenses are quite distinct, while there may be one common to both, and that these articles define different offenses.

If a person should be convicted under article 320 upon evidence which not only establishes the offense charged, but also that defined in article 163, and the State were to attempt to convict for the offense defined by article 163 under an indictment

drawn under said article, in such state of case a very serious question would arise.

But let us suppose that the party is being tried upon an indictment drawn upon article 320, and that the evidence clearly shows a violation of article 163 as well as article 320. Can the accused take advantage of this matter or complain? Evidently not, unless the trial is upon *complaint* before a court which has no jurisdiction of the greater offense, that shown, not by the complaint, but by the evidence. (See Code, Crim. Proc., art. 553). There was no error in refusing to quash the indictment.

Appellant insists that the election was void, and hence there, was no offense in carrying the gun. The record furnishes ample proof that an election was being held to determine whether, the sale of intoxicating liquors should be prohibited in a certain precinct in Karnes county. This election was had under color of law, and if not in strict compliance with the statute, certainly the appellant can not object.

The charges requested were properly refused. The evidence objected to was immaterial and harmless.

The judgment is affirmed.

*Affirmed.*